[Cite as *State v. Gause*, 2022-Ohio-2168.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | |
|---|---|
| STATE OF OHIO | : |
| | : |
| Plaintiff-Appellee | : Appellate Case No. 29162 |
| | : |
| v. | : Trial Court Case No. 2020-CR-1616 |
| | : |
| ANTHONY E. GAUSE | : (Criminal Appeal from |
| | : Common Pleas Court) |
| Defendant-Appellant | : |
| | : |

. . . . . . . . . . .

O P I N I O N

Rendered on the 24th day of June, 2022.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Atty. Reg. No. 0069384, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
     Attorney for Plaintiff-Appellee

MATTHEW M. SUELLENTROP, Atty. Reg. No. 0089655, 6 North Main Street, Suite 400, Dayton, Ohio 45402
     Attorney for Defendant-Appellant

. . . . . . . . . . . . .

DONOVAN, J.

**{¶ 1}** Defendant-appellant Anthony E. Gause appeals his convictions for murder, with a firearm specification, discharge of a firearm on or near a prohibited premises, and tampering with evidence. Gause filed a timely notice of appeal on June 15, 2021.

**{¶ 2}** The incident which formed the basis for the charges occurred on May 29, 2020, at a residence on Manhattan Avenue in Dayton, Ohio, where Gause was present with several other people, including William White, Timothy Cosby, and Jayven Kilgore. The group of men had gathered at the residence on the previous night to drink alcohol and had remained there until the following morning. At approximately 7:00 a.m., White and Kilgore got into an altercation with one another, and Gause eventually got involved. Gause, Cosby, and White then chased Kilgore down Manhattan Avenue. Cosby had been walking his dog when the chase began.

**{¶ 3}** Kelly Smith, who lived in the neighborhood, testified that she heard some men yelling in the alley behind her house on the morning of the incident. Smith then observed three men running down the middle of Manhattan Avenue chasing another man. Smith also observed one of the men pull a handgun from the pocket or waistband of his pants and continue running down the street. Shortly after the men passed from Smith's sight, she heard gunshots.

**{¶ 4}** After receiving a "ShotSpotter" alert and several 911 calls regarding the shooting, Dayton Police Officer Chelsea Weitz responded to the scene and found Kilgore lying dead in front of a residence on Manhattan Avenue with a gunshot wound to the side of his chest. Evidence technician Craig Stiver testified that he located three spent .40 caliber cartridge casings in the street near where the shooting occurred. Detective David

House testified that, after viewing a video recorded on a Ring Doorbell camera at the time of the shooting and speaking with other police officers at the scene, he identified Timothy Cosby as a witness and possible suspect in the shooting. At that point, Cosby had returned to the scene of the shooting to retrieve his cellphone, which he had dropped during the chase, and he was placed in the back of Officer Weitz's cruiser. Detective House directed Officer Weitz to transport Cosby to the Safety Building in Dayton to be interviewed. Detective House also took a screenshot from the Ring Doorbell video which depicted a man (later identified as Gause) who appeared to be holding a handgun in his right hand.

{¶ 5} After interviewing Cosby, Detective House focused his investigation on Gause. Cosby stated that Gause was his nephew and identified him as the individual who shot Kilgore. Cosby also provided Detective House with Gause's cellphone number. Detective House provided Gause's cellphone number to Detective Zach Farkas, who then contacted Gause's wireless carrier, T-Mobile, and pinged his cellphone in an effort to locate him. After "pinging" Gause's cellphone for approximately two hours, the police located Gause near the scene of the shooting at his girlfriend's apartment where he was eventually arrested and taken into custody.

{¶ 6} Prior to being interviewed, Gause was informed of his *Miranda* rights and signed a waiver of his rights. Detective House then interviewed Gause, who admitted to chasing Kilgore down Manhattan Avenue, pulling a .40 caliber handgun from his waistband, and firing shots in Kilgore's direction. Gause stated that he did not know whether Kilgore had been struck by any of the bullets. Significantly, during the interview,

Gause never asserted that anyone else had a firearm on the morning of the shooting or that another person had shot at Kilgore as well. Furthermore, as Gause sat alone in the interview room after the detectives stepped out for a moment, he put his head in his hands and could be heard saying, "Here for murder. Why'd I do it?"

{¶ 7} On June 8, 2020, Gause was indicted for Count I, discharge of a firearm on or near a prohibited premises; Count II, felonious assault (deadly weapon); Count III, murder (proximate result); Count IV, felonious assault (serious harm); Count V, murder (proximate result); and Count VI, tampering with evidence (alter/destroy). Counts I through V were all accompanied by mandatory three-year firearm specifications. At his arraignment on June 11, 2020, Gause stood mute, and the trial court entered pleas of not guilty to the charged offenses on his behalf.

{¶ 8} On July 12, 2020, Gause filed a motion to suppress the statements he made during the interview with Detective House. A hearing was held on that motion on August 31, 2020, and the trial court overruled the motion to suppress on January 14, 2021.

{¶ 9} The case proceeded to a jury trial beginning on May 24, 2021. On May 27, 2021, the jury found Gause guilty of all of the charged offenses and the attendant firearm specifications. At sentencing on June 11, 2021, the trial court merged the felonious assault and murder offenses and sentenced Gause to an aggregate term of 24 years to life in prison.

{¶ 10} Gause appeals, raising two assignments of error.

{¶ 11} Gause's first assignment of error is as follows:

THE APPELLANT WAS DENIED HIS RIGHT TO THE EFFECTIVE

ASSISTANCE OF COUNSEL PURSUANT TO ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION AND THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION.

{¶ 12} In his first assignment, Gause contends that he received ineffective assistance when his trial counsel failed to challenge the warrantless ping of his cellphone by the police prior to his arrest in the motion to suppress. In support of his argument, Gause relies upon the U.S. Supreme Court's opinion in *Carpenter v. United States*, __ U.S. __ 138 S.Ct. 2206, 201 L.Ed.2d 507 (2018).

{¶ 13} Alleged instances of ineffective assistance of trial counsel are reviewed under the two-pronged analysis set forth in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted by the Supreme Court of Ohio in *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). To prevail on an ineffective assistance claim, a defendant must establish (1) that his or her trial counsel's performance was deficient and (2) that the deficient performance resulted in prejudice. *Strickland* at paragraph two of the syllabus; *Bradley* at paragraph two of the syllabus. The failure to make a showing of either deficient performance or prejudice defeats a claim of ineffective assistance of counsel. *Strickland* at 697.

{¶ 14} To establish deficient performance, it must be shown that trial counsel's performance fell below an objective standard of reasonable representation. *Id.* at 688. In evaluating counsel's performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the

challenged action 'might be considered sound trial strategy.' " *Id.* at 689, quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955).

**{¶ 15}** To establish prejudice, the defendant must demonstrate that there is "a reasonable probability that, but for counsel's errors, the proceeding's result would have been different." *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶ 204, citing *Strickland* at 687-688 and *Bradley* at paragraph two of the syllabus. " 'A reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *Bradley* at 142, quoting *Strickland* at 694.

**{¶ 16}** Here, trial counsel filed a motion to suppress but failed to include any challenge to the warrantless ping of Gause's cellphone by the police prior to his arrest. "The failure to file a suppression motion is not per se ineffective assistance of counsel." *State v. Wilson*, 2d Dist. Clark No. 2008-CA-45, 2009-Ohio-2744, ¶ 11, citing *State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000); *accord State v. Thomas*, 2d Dist. Clark No. 2010-CA-48, 2011-Ohio-1987, ¶ 15. "Rather, trial counsel's failure to file a motion to suppress constitutes ineffective assistance of counsel only if the failure to file the motion caused Defendant prejudice; that is, when there is a reasonable probability that, had the motion to suppress been filed, it would have been granted." (Citations omitted.) *Wilson* at ¶ 11; *see also State v. Nields*, 93 Ohio St.3d 6, 34, 752 N.E.2d 859 (2001).

**{¶ 17}** In *Carpenter*, __ U.S. __, 138 S.Ct. 2206, 201 L.Ed.2d 507, the U.S. Supreme Court held that the government's acquisition of historical cell phone location records spanning a period of 127 days constituted a Fourth Amendment search for which

a warrant had been required. *Carpenter* also recognized, however, that "case-specific exceptions may support a warrantless search of an individual's cell-site records under certain circumstances." *Id.* at 2222. In particular, the exigencies of a situation may justify dispensing with a warrant before accessing cell phone location records when there is a "need to pursue a fleeing suspect, protect individuals who are threatened with imminent harm, or prevent the imminent destruction of evidence." *Id.* at 2223.

{¶ 18} In *State v. Snowden*, 2019-Ohio-3006, 140 N.E.3d 1112 (2d Dist.), we found Carpenter applicable to law enforcement's request for a service provider to ping the defendant's cell phone twice over two days. *Id.* at ¶ 33. We also found that *Carpenter* had retroactive applicability to the defendant's case, which remained pending when *Carpenter* was decided. *Id.* at ¶ 30-31. Nevertheless, we held that the warrantless pinging was permissible because exigent circumstances existed, namely that the armed defendant had shot the victim and fled the scene. *Id.* at ¶ 37. In *State v. Davison*, 2d Dist. Montgomery No. 28579, 2021-Ohio-728, we echoed our rationale in *Snowden*, stating as follows:

> * * * [W]e have no trouble concluding that exigent circumstances justified initially dispensing with a warrant and pinging Davison's cell phone as soon as his name and phone number were obtained. As the U.S. Supreme Court recognized in *Carpenter,* the need to pursue a fleeing suspect can constitute an exigent circumstance sufficient to overcome the warrant requirement. That was true in *Snowden*, where this court found exigent circumstances to allow warrantless pinging after an armed defendant shot

the victim and fled the scene. We reach the same conclusion in the present case, which involved an armed Davison fleeing the scene in his red Durango after shooting and killing two people. The trial court did not err in finding exigent circumstances when Davison objected at trial to the warrantless pinging of his cell phone.

*Id*. at ¶ 14.

**{¶ 19}** Here, as in *Snowden*, Gause shot the victim in the presence of two witnesses, White and Cosby. An important factor in determining whether exigent circumstances exist is the gravity of the underlying offense. *Welsh v. Wisconsin*, 466 U.S. 740, 753, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984). Upon review, we conclude that an exigency existed. *See State v. Johnson*, 187 Ohio App.3d 322, 2010-Ohio-1790, 931 N.E.2d 1162 (2d Dist.) ("[g]enerally, the exigent-circumstances exception to the Fourth Amendment's warrant requirement can apply when the delay associated with obtaining a warrant would result in endangering police officers or other individuals, or would result in concealment or destruction of evidence"). Gause was identified as the perpetrator, fled the scene, and was armed. Furthermore, Gause had knowledge that the eyewitnesses had observed him commit the homicide and therefore could implicate him. Exigent circumstances took the police conduct herein outside of the warrant requirement.

**{¶ 20}** Because exigent circumstances existed justifying the warrantless ping of Gause's cellphone, trial counsel's decision not to file a motion to suppress the cellphone site location information was not unreasonable and did not constitute ineffective assistance of counsel.

{¶ 21} Gause's first assignment of error is overruled.

{¶ 22} Gause's second assignment of error is as follows:

APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 23} In his second assignment, Gause argues that his convictions were against the manifest weight of the evidence. Specifically, Gause argues that the evidence adduced at trial established that three shots were fired at Kilgore as he ran down Manhattan Avenue on the morning of May 29, 2020. However, Gause argues that he confessed to firing only two shots in Kilgore's direction when he was interviewed by Detective House. Based upon the fact that three .40 caliber shell casings were recovered from the scene of the shooting but Gause had only admitted to firing two shots, he argues that the evidence fails to establish beyond a reasonable doubt that he fired the fatal shot that killed Kilgore.

{¶ 24} "[A] weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." (Citations omitted). *State v. Jones*, 2d Dist. Montgomery No. 25724, 2014-Ohio-2309, ¶ 8. "When evaluating whether a conviction is against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *Id.*, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d

541 (1997).

{¶ 25} Because the trier of fact sees and hears the witnesses at trial, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses. *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997). However, we extend less deference in weighing competing inferences suggested by the evidence. *Id.* The fact that the evidence is subject to differing interpretations does not render the judgment against the manifest weight of the evidence. *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 14. A judgment should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 26} Gause was convicted of the murder of Jayven Kilgore, in violation of R.C. 2903.02(B). Therefore, the jury necessarily found that Gause had caused the death of Kilgore as a proximate result of causing or attempting to cause Kilgore physical harm with a deadly weapon, which the jury also found to be a .40 caliber handgun. At trial, the jury heard Detective House's interview with Gause, during which he admitted chasing Kilgore down Manhattan Avenue and firing a .40 caliber handgun in Kilgore's direction. The Ring Doorbell video footage depicted Gause chasing after Kilgore with what appeared to be a handgun in his right hand. White testified that he had observed Gause in possession of a handgun shortly before Kilgore was shot. Cosby identified Gause as the individual in the Ring Doorbell video and as the individual who shot and killed Kilgore. There was no evidence adduced during trial which established that anyone other than Gause was in the

possession of a handgun before, during, or after the shooting occurred. Significantly, although Gause admitted to firing only two shots, all three shell casings recovered by the police were found to have come from the same .40 caliber handgun. Additionally, Gause never stated to police that he gave his handgun to another person before or after he shot at Kilgore.

{¶ 27} Gause also argues that Kelly Smith testified that Cosby, not Gause, was the individual in possession of the handgun. Although Smith described the person with the handgun as wearing orange pants (Cosby was wearing orange pajama bottoms at the time of the shooting), she also testified that the man walking the dog was *not* the individual with the gun. Unrefuted evidence was presented a trial which established that Cosby was walking his dog at the time Kilgore was shot.

{¶ 28} Having reviewed the record, we find no merit in Gause's manifest weight challenge. It is well settled that evaluating witness credibility is primarily for the trier of fact. *State v. Brown*, 2d Dist. Montgomery No. 27571, 2018-Ohio-3294; *see also State v. Benton*, 2d Dist. Miami No. 2010-CA-27, 2012-Ohio-4080, ¶ 7. A trier of fact does not lose its way and create a manifest miscarriage of justice if its resolution of conflicting testimony is reasonable. *Id.* Here, the jury reasonably credited the State's evidence, which established that Gause was the individual who shot and killed Kilgore. Accordingly, the jury did not lose its way and create a manifest miscarriage of justice in finding Gause guilty of the charged offenses.

{¶ 29} Gause's second assignment of error is overruled.

{¶ 30} Both of Gause's assignments of error having been overruled, the judgment

of the trial court is affirmed.

. . . . . . . . . . . . .

TUCKER, P.J. and EPLEY, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Andrew T. French
Matthew M. Suellentrop
Hon. Mary Katherine Huffman